**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | |
|---|---|
| JOE PENSKA, Individually and For Others Similarly Situated | **Case No. 2:20-CV-435-NR** |
| v. | |
| T.S. DUDLEY LAND COMPANY, INC. | |
| v. | |
| AJP LAND SERVICES, LLC | |

**BRIEF IN SUPPORT OF**
**AGREED MOTION TO APPROVE SETTLEMENT**

Plaintiff Joe Penska (Penska), Defendant T.S. Dudley Land Company Inc. (Dudley), and Third-Party Defendant AJP Land Services, LLC (AJP) (together, the Parties) have reached a settlement in this matter. The settlement is a reasonable compromise that will adequately compensate Penska for the unpaid overtime alleged and will eliminate the need for the Parties to engage in protracted and expensive litigation.

**1.     Background.**

Penska filed this class and collective action on March 31, 2020. Doc. 1. Penska alleged Dudley misclassified him and other similarly situated workers as independent contractors and paid them a day rate with no overtime in violation of the Fair Labor Standards Act (FLSA) and Pennsylvania Minimum Wage Act (PMWA). *Id*. Penska further claimed he and the other workers like him were entitled

1

to unpaid back wages, as well as liquidated damages, attorneys' fees, interest, and costs. *Id.*; *see also* 29 U.S.C. § 216.

The Parties hotly contested Penska's allegations. *See, e.g.*, Doc. 7; Doc. 16; Doc. 21; Doc. 22; Doc. 23; Doc. 26; Doc. 27; Doc. 28; Doc. 33; Doc. 34; Doc. 36; Doc. 42; Doc. 49; Doc. 53; Doc. 55; Doc. 56. Dudley maintained that it properly classified Penska and its other workers as independent contractors (as opposed to employees) and that it properly classified and compensated these workers. *See* Doc. 7 at Aff. Def. Nos. 3, 6, 7; Doc. 16 at Aff. Def. Nos. 3, 6, 7. Dudley further maintained that Penska could not show class or collective treatment under the PMWA or FLSA was appropriate. *See, e.g.*, Doc. 28. In addition, Dudley claimed any violation of the PMWA or the FLSA was made in good faith and were not not made willfully and contested the damages claimed by Penska. *See* Doc. 7 at Aff. Def. Nos. 4, 5; Doc. 16 at Aff. Def. Nos. 4, 5.

Likewise, the Parties disputed whether Penska and/or his entity (AJP) breached a contract with Dudley or had to indemnify Dudley for the wage and hour claims Penska alleged in this action. *See* Doc. 16; Doc. 21; Doc. 26; Doc. 27; Doc. 33; Doc. 34; Doc. 42; Doc. 49; Doc. 53; Doc. 55; Doc. 56. Dudley brought a third-party complaint against AJP and counterclaim against Penska, alleging Penska and AJP breached Dudley and AJP's vendor agreement by bringing the instant action and failing to indemnify Dudley against the claims Penska brought in this lawsuit, and that Penska and AJP fraudulently induced Dudley into entering the vendor agreement. *See* Doc. 16; Doc. 53. Conversely, Penska argued (1) Dudley had an independent duty to comply with the FLSA, which it could not delegate to Penska or

AJP; (2) Dudley's third-party claims against AJP and counterclaim against Penska were improper and failed as a matter of law in this FLSA action; and (3) the Court lack supplemental jurisdiction over Dudley's claims. *See* Doc. 21; Doc. 33; Doc. 34; Doc. 55; Doc. 56.

Finally, the Parties disputed whether Penska had standing to pursue his claims, or whether he was judicially estopped to do so. *See* Doc. 26; Doc. 27; Doc. 42; Doc. 49.

Ultimately, the Parties reached the following settlement on behalf of Penska (individually[1]) that resolved their *bona fide* dispute:

| | |
|---|---|
| Gross Settlement Amount: | $24,000.00 |
| Attorneys' Fees: | $9,600.00 |
| Attorneys' Out-of-Pocket Costs: | $683.97 |
| Net Settlement Payment to Penska: | $13,716.03 |

As a result of the Parties' Agreement, Penska will receive meaningful relief for his claimed overtime hours. The Parties submit the settlement reached is a fair and reasonable result stemming from a *bona fide* dispute concerning the payment of wages to Penska. *See* Exhibit 1, Settlement Agreement and Release (the Agreement).

## 2.    Key Settlement Terms.

The specific terms of the Parties' agreed-upon settlement are set forth in their Agreement. *Id.* The Parties' Agreement obligates Dudley to pay a Gross Settlement

---

[1] The Parties' Agreement does not cover or involve any Putative Class Members or other similarly situated workers. Further, there are no Opt-In Plaintiffs who have joined this action since Penska initiated it on March 31, 2020.

Amount of $24,000.00. If approved, all claims, including claims for attorneys' fees ($9,600.00), which is 40% of the Gross Settlement Amount) and costs ($683.97) will be deducted from the Gross Settlement Amount, resulting in a Net Settlement Amount to Penska of $13,716.03. *Id*. at ¶¶ 5, 11, 12, 16, and 17.

If approved, Penska (and AJP) will release Dudley from the wage and hour claims Penska asserted, or could have asserted, in this Lawsuit, as well as claims Penska or AJP could have asserted in this Lawsuit related to Penska's work for Dudley. Specifically, Penska and AJP agreed to release Dudley from:

> any and all state, local or federal claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, brought in the lawsuit or not, against Defendant Releasor/Releasee (as defined herein) for alleged unpaid wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution or any other compensation and relief arising under the Fair Labor Standards Act (29 USC §§ 201 et seq., hereinafter "**FLSA**"), or any other state or local wage-related law applicable to the work Plaintiff Releasors/Releasees performed for Defendant Releasor/Releasee, including any other compensation and relief arising under the Pennsylvania Minimum Wage Act (42 P.S. § 333.104 et seq., hereinafter "**PMWA**"); and any and all claims, demands, rules or regulations, or any other causes of action of whatever nature, whether known or unknown, brought in the lawsuit or not, including but not limited to Title VII of the Civil Rights Act of 1964, as amended; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; The Genetic Information Nondiscrimination Act of 2008 (GINA); The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan); The Civil Rights Act of 1991; The Immigration Reform and Control Act; The Americans with Disabilities Act of 1990; The Family and Medical Leave Act; The Equal Pay Act; The Families First Coronavirus Response Act ("FFCRA"); or The Coronavirus Aid, Relief, and Economic Security ("CARES"), or any allegation for costs, fees, interest, or other expenses including attorneys' fees incurred in any matter; or any and all claims for bonuses, commissions or any claims for incentive compensation of any type, whether under common law or policy or contract, and any other federal, state or local human rights,

4

> civil rights, wage-hour, pension or labor laws, rules and/or regulations, public policy, any and all claims that were asserted or that could have been asserted in the Action, any claim for breach of contract or tort laws, or any claim arising under common law, or any other action or grievance against the Defendant Releasor/Releasee based upon any conduct occurring up to and including the Effective Date.

*Id.* at ¶ 18. Likewise, in addition to Penska's Settlement Payment, Dudley will release Penska and AJP from the claims it asserted, or could have asserted, in this Lawsuit. Specifically, Dudley has agreed to release Penska and AJP from:

> from any and all claims, obligations, demands, actions, rights, causes of action, liabilities of whatever nature that may have accrued as of the time when Dudley executes this Agreement, including but not limited to any claim for indemnification, contribution, fraud, or breach of contract, and any claim for costs, fees, interest, or other expenses incurred in this Action.

*Id.* at ¶ 19.

## 3. Argument & Authority.

"Because of the public interest in FLSA rights, there are [] two ways that FLSA claims can be settled or compromised by employees[.]" *Adams v. Bayview Asset Mgmt., LLC*, 11 F. Supp. 3d 474, 476 (E.D. Pa. 2014). The first is a compromise supervised by the Department of Labor under 29 U.S.C. § 216(c). *Id.* The second is a "district court-approved compromise" under 29 U.S.C. § 216(b). *Id.*

Notably, however, as this Court recently recognized, judicial approval of FLSA settlements is not always required, especially where the case is not "being settled on a classwide or collective basis." *Horton v. Right Turn Supply, LLC*, 455 F. Supp. 3d 202, 204 (W.D. Pa. 2020) (Ranjan, J.) (emphasizing "the Court isn't so sure its approval is needed here, collecting cases, and analyzing whether the court should

approve an individual FLSA settlement under the *Girsh* factors merely to "provide the parties comfort"). "Indeed, despite the majority of courts assuming [] approval is required, 'nothing in the text of the FLSA expressly requires court review and approval of settlements.'" *Id.* at 205 (quoting *Fails v. Pathway Leasing LLC*, No. 18-CV-00308, 2018 WL 6046428, at *2 (D. Colo. Nov. 19, 2018)). Nevertheless, out of an abundance of caution, the Parties request the Court's approval of their Agreement.

When approving an individual, non-collective FLSA settlement, "[t]he criteria … are narrow" and differ from the criteria for approving collective FLSA settlement outlined in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). *Id.* at 205-06 (noting "the *Girsh* factors are unhelpful" and "less applicable in evaluating the reasonableness of a single-plaintiffs settlement, particularly with a relatively low dollar value."). Indeed, "rigid application of th[e *Girsh*] factors is neither required nor appropriate in the FLSA context[.]" *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-CV-01007, 2019 WL 5394751, at *3 (W.D. Pa. Oct. 22, 2019) (Ranjan, J.). "Instead, what is largely case dispositive on the question of reasonableness is a simple cost-benefit analysis." *Horton*, 455 F. Supp. 3d at 206. As this Court has explained the inquiry can be reduced to two simple questions: "First, what are the anticipated costs of continuing to litigate the case? And, second, what are the plaintiff's damages weighed against his likelihood of success? **That's it.**" *Id.* (emphasis added).

## A.    The Anticipated Costs of Continued Litigation Are Substantial.

"Generally, cases requiring great expenditures of time, money, and other resources on behalf of the parties and the court are good candidates for settlement."

*Kapolka*, 2019 WL 5394751, at \*4 (cleaned up); *see also Horton*, 455 F. Supp. 3d at 208.

As outlined, *supra*, the Parties contest numerous aspects of this case, including Penska's standing to bring his claims, Dudley's liability to Penska, whether Penska was Dudley's employee or properly classified as an independent contractor, whether any violation of the FLSA and/or PMWA was willful or made in good faith, whether Dudley could delegate its responsibilities under the FLSA to AJP and/or Penska, whether Penska and/or AJP breached the vendor agreement with Dudley, whether Dudley's claims for indemnification and contribution were proper in this FLSA action, whether the Court has supplemental jurisdiction over Dudley's counterclaims against Penska and third-party claims against AJP, and whether conditional certification and authorization to send notice to similarly situated workers is warranted.

Indeed, prior to settling, the Parties engaged in substantial motions practice on the many disputes in this case. *See*, *e.g.*, Doc. 7; Doc. 16; Doc. 21; Doc. 22; Doc. 23; Doc. 26; Doc. 27; Doc. 28; Doc. 33; Doc. 34; Doc. 36; Doc. 42; Doc. 49; Doc. 53; Doc. 55; Doc. 56. And, at the time the Parties reached their settlement, there were no less than three motions pending (one of which was not even fully briefed). *See* Doc. 22 (Penska's Motion for Conditional Certification); Doc. 26 (Dudley's Motion for Judgment on the Pleadings); Doc. 55 (AJP's Motion to Strike, Dismiss, or Sever Dudley's Amended Third-Party Complaint).

Critically, not only would the Parties be required to complete briefing on *these* disputes, but they would also require significant additional work in order to bring

this case to trial posture. To start, cases involving employee overtime rights are governed by highly technical and specialized state and federal wage statutes and regulations. Although FLSA cases are not novel, FLSA work is a specialized area of law where extra skill is needed to litigate. *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013) ("[W]age and hour collective and class actions are, by their very nature, complicated and time-consuming."). Further, resolving the procedural issues, the merits, and calculating damages is inherently risky, costly, and time-consuming. *See Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013).

Indeed, while the Parties engaged in some informal discovery before reaching their settlement, both Parties would require substantial additional discovery (including, for example, numerous costly depositions and the exchange of electronic discovery) to move forward with this matter on a class or collective basis and to prepare this matter for trial. *See Horton*, 455 F. Supp. 3d at 208. Much like the posture of the case in *Horton*, here

> no depositions have been conducted. Such discovery could be even more prolonged than usual given the ongoing public health crisis related to COVID-19. And if the Court rejects the settlement, the parties still have motions for class certification, motions for summary judgment, and pre-trial motions to look forward to before this case reaches trial.

*Id.* Continued litigation would result in a significant expenditure of resources and would likewise place a substantial drain on judicial resources. *See Craig v. Rite Aid Corp.*, No. 4:08-CV-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013). In fact, these

litigation expenses would quickly dwarf Penska's maximum recovery under the FLSA (if they haven't already).[2]

Further complicating things, the Parties had yet to engage in discovery regarding Dudley's counterclaims against Penska and third-party claims against AJP. Much like litigating Penska's FLSA and PMWA claims would require significant and costly additional discovery and motions practice, the same is true of Dudley's claims against Penska and AJP.

In short, the anticipated costs of continued litigation are substantial and weigh in favor of approval. *See Horton*, 455 F. Supp. 3d at 208.

## B.    The Settlement Provides Penska With Almost All of His Claimed Overtime.

"[T]he fairness of [an FLSA] settlement primarily depends on the amount of the settlement compared to the amount the plaintiff claims in FLSA damages." *Solkoff v. Pennsylvania State Univ.*, 435 F. Supp. 3d 646, 654 (E.D. Pa. 2020) (citing *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 532 (E.D. Pa. 2016) ("The Court finds the compensation terms fair and reasonable because the settlement amount is significant in light of Plaintiff's claim.")); *see also Horton*, 455 F. Supp. 3d at 206-08. "[W]here there is a bona fide dispute about the amount or existence of liability, the

---

[2] For example, due to the significant motions practice in this case, attorney Taylor Jones (a 4th-year associate) with a reasonable rate of $400.00/hour, *see* http://www.laffeymatrix.com/see.html (establishing a current rate of $458 for attorneys with 4-7 years of experience), worked approximately 60 hours on this litigation as of filing this instant Motion. This work alone totals $24,000.00 – equivalent to the Gross Settlement Amount of the Parties' settlement and only approximately $2,600.00 shy of Penska's alleged 3-year damages under the FLSA.

parties may reach a reasonable compromise over back pay." *Solkoff*, 435 F. Supp. 3d at 655. "Under these circumstances, the Court's role is to scrutinize the compromise by comparing the amount originally claimed to the settlement amount." *Id.* (explaining that where "the gross amount of the settlement is not apportioned among the various FLSA and non-FLSA claims, the Court will consider whether the gross amount satisfies the FLSA claim only"); *cf. Horton*, 455 F. Supp. 3d at 208 (comparing plaintiff's damages claimed with his recovery under the settlement).

Here, there was a bona fide dispute as to liability and the hours worked, as Dudley paid Penska a day rate and did not track his hours worked. It is undisputed that from April 2017 through May 2017, Penska's day rate was $355/day. This rate increased to $370/day in June 2017. Between April 1, 2017 and April 15, 2018, Dudley paid Penska for 311 days worked.

The question of hours was more difficult. Dudley argued Penska's estimate of his hours was overstated. For example, Dudley argued Penska failed to discount the many days on which he did not work a full day (and still received his full day rate). Dudley also argued Penska failed to account for bona fide meal periods and other non-compensable time in creating his damage model.

Using 8 hours per day as Dudley advocated, Penska's unpaid overtime would equal $11,942.50. Penska claimed a 10-hour day was more realistic, resulting in an unpaid overtime calculation of $20,762.50. And under the settlement, Penska will receive $13,716.03, or 66% of his own estimate of his unpaid overtime (and 115% of his estimated damages utilizing 8-hour days, as advanced by Dudley).

Notably, Penska only worked a mere two workweeks for Dudley in the two years prior to him initiating this action. And the Parties dispute whether Penska would be able to satisfy his burden of proving Dudley's alleged violation of the FLSA was willful to extend the presumptive 2-year statute of limitations to 3 years. If Penska were unsuccessful, his claimed overtime would dramatically drop to $370 (based on a 10-hour day). Under this scenario, Penska would recover 3,707% of his claimed overtime under the Parties' settlement.

Given Penska will recover a significant portion of his maximum claimed overtime, the Settlement is reasonable. *See*, *e.g.*, *Solkoff*, 435 F. Supp. 3d at 657 (concluding a settlement was a "reasonable compromise" where recovery of $97,500 was approximately 70% of the $135,720 maximum overtime claimed).

## C.   The Court Is Not Required to Scrutinize the Attorneys' Fees Received Under the Parties' Settlement.

This Court "does not believe it has authority to review the attorneys' fees component of [] private, non-class settlement[s]." *Horton*, 455 F. Sup. 3d at 206 (citing *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) (concluding a settlement of attorneys' fees that is separate from a settlement of an FLSA claim is not subject to review)). "And without any statutory mandate, there is otherwise no sound reason for this Court to judge the attorneys' fees." *Id.* at 208-09.

Here, like the settlement in *Horton*, "[t]his is not a classwide settlement, and thus no principal-agent problems exist." *Id.* at 209. Because Penska's "counsel are accountable directly to him[,] … [he] is well positioned (indeed, even better positioned than this Court) to monitor his own lawyers' work and their bills." *Id.*

Accordingly, as this Court has made clear, given this is a single-plaintiff settlement, the Court is not required to review the attorneys' fees component of the Parties' Agreement. *Id*.

**4.    Conclusion.**

For the foregoing reasons, the Court should approve the Parties' Agreement in its entirety and dismiss this lawsuit with prejudice.

Respectfully submitted,

By: */s/ Taylor A. Jones*

**Michael A. Josephson**
PA ID No. 308410
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Taylor A. Jones**
Texas Bar No. 24107823
(*admitted pro hac vice*)
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
tjones@mybackwages.com

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**Joshua P. Geist**
PA ID No. 85745
Goodrich & Geist, PC
3634 California Ave.
Pittsburgh, PA 15212
412-766-1455 – Telephone
412-766-0300 – Facsimile
josh@goodrichandgeist.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

On February 22, 2021, I served the foregoing document on all parties and/or their counsel of record via this Court CM/ECF filing system in accordance with the Federal Rules of Civil Procedure.

*/s/ Taylor A. Jones*
**Taylor A. Jones**

## CERTIFICATE OF CONFERENCE

Pursuant to the Parties' Settlement Agreement, Ex. 1, Dudley is **not opposed** to the relief requested herein.

*/s/ Taylor A. Jones*
**Taylor A. Jones**